2240544WC, Forest Preserve of DuPage County, Appellant by Daniel Flores v. Illinois Workers' Compensation Comm'n et al., Dale Crane Appley by Frank Kress. Mr. Flores, you may proceed. Thank you, Your Honor. Good morning, counsel. May it please the court, my name is Daniel Flores and I represent the appellant, the Forest Preserve of DuPage County. While my client is appealing an award of TTD benefits and prospective medical benefits, ultimately this case boils down to one issue. Was the Commission's finding that Petitioner's right shoulder condition is causally related to Petitioner's 2018 work accident against the manifest weight of the evidence? Our argument is that it was for two reasons. One, the manifest weight of the evidence, namely Petitioner's treatment immediately following the work accident, suggests that only causally related condition was a pectoralis tear. And two, the Commission improperly relied on Dr. Pissinger in finding that there was a causally related right shoulder tear. Now, with respect to the first issue, I do want to front load and say that I acknowledge that we are dealing with a manifest weight standard here. However, our request isn't for this court to re-weigh the evidence, but our suggestion is that the manifest weight of the pectoralis tear. Specifically, I think that this court should look at all of the treatment immediately following the work accident. Appellant's brief contains a table which cites to the many spots in the record showing that immediately after the work accident, Petitioner underwent MRI films, both of the chest as well as the shoulder, and the numerous radiologists who did those tests, the numerous orthopedic surgeons at the VA, as well as IME physician, all reviewed those films and only found a work-related pectoralis tear. With respect to the second point, the Commission as well as Appellee rely significantly on Dr. Pissinger, and their primary point is that Dr. Pissinger had an opportunity to review an MR orthogram that was completed in 2021. Appellee suggests that this is the most important piece evidence, but I do think it is important that both the Commission as well as Appellee have failed to address the fact that Dr. Pissinger, at his first appointment with Petitioner, which happened on February 26, 2021, that's in the record at page 75, noted that he was already suspicious of a slap tear, subscapularis tendon tear, and supraspinatus tendon tear, which he thought were causally related to the work accident. He thought that all of Petitioner's prior treaters had improperly assessed the pectoralis tear, and he did so at that point without having reviewed an MRA. After he prescribed the MRA... Don't those records reflect that in March of 2021, he wrote that multiple images are examined today, specifically images of the 2018, and from November 2020, and the most recent MRI of March 21. Didn't he write that in his records? Yes, that was subsequently, Judge. He did ultimately prescribe an MRA, did look at the prior films, and did look at the MRA and find a causally related pec tear, but at that first treatment, he is already suspicious of a pec tear. Why can't he be suspicious and then examine records to support his suspicion? Isn't that what doctors do when they diagnose? Yes, absolutely, Judge, and our position isn't that he was improper in going about it in that way. Our point is only that to the extent that the appellee is saying that Dr. Pissinger really only relied on this MRA in diagnosing a causally related shoulder tear, that is incorrect, and that he was already suspicious of it without having examined an MRA. You're saying that he was prejudiced to find something that didn't exist? I do think to some extent he was, Judge. I do think that he was already suspicious of this tear, and when he reviewed the MRA, he causally related it, despite the fact that he hadn't initially, at his first visit, had any opportunity to review any of Petitioner's prior treatment records, or the fact that multiple orthopedic surgeons had found that there wasn't any sort of pathology with respect to the shoulder. I do think, Your Honor, that this would be a significantly different case if there was only imaging done in 2021. However, that's not the case. Petitioner had an MRI done of the shoulder in 2018. Multiple orthopedic surgeons reviewed those images, and they had the opportunity to say that, based on those images, they thought that an MRA was required to find whether or not there's any pathology for the shoulder. None of them did. Several orthopedic surgeons reviewed those films and found that the only evidence there was at that time, in 2018 and in 2019, was of a causally related back tear, which my client did pay for. So, on that basis, our request is that the commission decision be reversed. Okay. Is that it? I'm suspicious that he had a confirmation bias. Can I reverse just on that? What would the opinion read like? So, it isn't just... Can you explain the evidence this court, considering the credibility of the witnesses, finds Dr. Shadid and Verma more credible? Additionally, this court finds there were two witnesses that saw it your way, and only one that saw it the police way. Would that be a well-reasoned decision? No, Judge. And again, it is not our suggestion that it is this court's job to reweigh the evidence or judge the credibility of the various medical professionals who examined the petitioner. Our suggestion is only that the manifest weight of the evidence, specifically the number of orthopedic surgeons who examined petitioner immediately after the work accident and found no evidence of a shoulder tear, is suggestive of the fact that the commission's decision was incorrect. Don't we have a whole litany of cases that say that just because there are more opinions on one side than on the other, that doesn't mean that if you credit the opinion of the lesser that it's against the manifest weight of the evidence. We've got a whole series of cases that say that. Yes, Judge. And again, our opinion isn't that just solely by number that this court should find that the manifest weight evidence supports the finding of no causally related shoulder tear. It's simply that the fact that the orthopedic surgeons had an opportunity to review petitioner's imaging immediately after the work accident, that would suggest that their opinions support a finding of no causally related shoulder tear. Okay. Counsel, I have a question and that is, you seem to couch a pittsinger's opinion or should I say testimony in that, you know, the only evidence presented with this hypothesis and then later a review of the MRA, it seemed to me in reviewing the briefs, it was more the argument of the appellee that it was only in pittsinger that reviewed the MRA and thus he was found credible and that set him aside to some extent his opinions as the other doctors. Do you follow that and do you have a comment? Yes, Judge. Yeah, we did request an IME from Dr. Shadid when petitioner had benefits for the shoulder. Dr. Shadid didn't review the MRA petitioner or appellee is correct that Dr. pittsinger is the only person to review that. However, I do think it is significant that he diagnosed a slap tear and several tendon tears that he causally related to the work accident before even reviewing that MRA. Wasn't that a point that the arbitrator and thus the commission found bolstered the credibility of pittsinger? Yes, Judge. That is generally what they relied on is the fact that Dr. pittsinger had reviewed the MRA and none of the other treaters had. But again, I think to the extent that he had already diagnosed that condition without reviewing the MRA, I think undercuts that opinion. Well, okay. I'd harken back then to Justice Hoffman's question on that point, but that's all I have. Okay. You'll have time Mr. Flores and reply. Thank you, Judge. Mr. Kress, you may respond. Good morning, your honors. Frank Kress on behalf of the appellee, Dale Crane. Counsel argued to you that he's not asking you to reweigh the facts that were in Dr. Shadid's point. What a reversal would look like if not a reweighing of the facts to find that the opinions of Dr. Verma and Dr. Shadid were superior to those of Dr. pittsinger. We don't have any errors of law that are being argued here that would warrant a de novo review. All issues in this fact are factual in basis and therefore the commission is the ultimate arbiter of those facts unless its decision is counter to the manifest weight of the evidence here. The standard is such that the opposite conclusion must clearly be the correct one for a reversal on those grounds. In this instance, as Justice Hoffman pointed out, it's not how many physicians might counter whichever physician won the day before the commission on a factual determination regarding causal connection. It's which doctor was, which doctor's opinion was selected by that commission and is there a basis for it? And in this instance, there was. And in particular, so because... Let's look at the basis, Mr. Kress. Yes, your honor. The basis for the larger number of surgeons was an MRI, correct? That is correct. And the basis for Mr. Pissinger's or Dr. Pissinger's opinion was an MRI, which he suspected later had the MRI done. And what did the MRIs show? The MRI revealed the tear of the superior labrum anterior to posterior, which we've called a slap tear throughout our briefs. Yeah, without going to medical school. Right, that's right. So is the MRA a better diagnostic technology than an MRI for apparently a condition that was disclosed? Not having been in medical school as well, my answer for you is yes, based upon my interpretation of what the physicians have said in this case. And the arbitration... And who's in charge of deciding or being, allegedly at least, given the medical expertise to decide between these conflicting opinions and conflicting technologies? Excuse me, I'm sorry, can you repeat that? Probably not, but I'll try again. Who is in the position to decide whether competing technologies are more accurate, if you want to use that term, or who has the expertise to make those decisions? Because you can't just... The commission is not just entitled, when you talk about manifest way of the evidence, there has to be something behind their decision. And now I'm looking at the evidence. Sure. Does manifest mean it's heavier, so to speak, it's more obvious, it's more logical, it's more accurate? Yes. And I would suggest both in his report and in his deposition, Dr. Pizinger indicated that the MRA, the MR orthogram was a better look into this gentleman's shoulder to determine what the diagnosis was. Based upon his assumptions about what the diagnosis was, to Justice Hoffman's point, the diagnostic came after the suggestion that there was something going on with a slap tear. The commission is charged with reviewing these divergent medical opinions and determining which one is best to adopt. And I would suggest that Dr. Pizinger's MR orthogram was a superior diagnostic tool, but he also explained that he saw no new injuries and he saw similar findings from the MRI that was conducted on August 21st of 18, as compared to the MRA, MR orthogram of March 18th of 2021. He said there was no new injury in there and that led him to give a causal relationship between the slap tear and the injury in question here. And the commission is charged with determining factual, making factual determinations, excuse me, has done so in this case. And again, to disturb that decision, that order, the opposite conclusion must clearly be the proper one and that's not here in the opinion of the appellee. We would ask that this court affirm the decision of the commission in its entirety because there are no factual errors here that are counter to the manifest weight of the evidence, and this court is not charged with re-weighing the evidence in the record. Anything further, Mr. Kress? No, nothing further. Any questions from the court? Hearing none, Mr. Flores, you may reply. No rebuttal from appellant will rest on our briefs. Okay. Thank you, counsel, both for your arguments in this matter this morning. We'll be taking a revisement and a written disposition shall issue.